UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

GUY-MAX DELPHIN,

                              Plaintiff,                    24-cv-3396

       -against-                                     **FIRST AMENDED**
                                                          **COMPLAINT**

JACQUES JUNIOR ARMAND,

                              Defendant.

-------------------------------------------------------------------x

      Guy-Max Delphin ("Delphin"), by his undersigned attorneys, as and for his First Amended Complaint against Defendant Jacques Junior Armand ("Armand"), alleges:

## PARTIES

    1.    Delphin is a natural person and is a citizen of the State of New York. Delphin is the managing member of Delphin Investments, LLC ("Investments"), and Amitie Alternative Capital Partners, LLC ("AACP"). Delphin was born in Haiti, and is a naturalized U.S. citizen.

    2.    Armand is a natural person and is a citizen of the State of Connecticut. Armand was born in Haiti, and remains a Haitian national.

## JURISDICTION AND VENUE

    3.    This Court has original jurisdiction of this civil action pursuant to 28 U.S.C.A. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest, costs and fees.

    4.    Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTS

### 1. The Agreement

5.     On January 30, 2015, Armand and his wife executed two documents with AACP: The first is titled "Summary of Terms," and the second is titled "Subscription and Adoption Agreement" (both attached hereto as Exh. "A" and hereinafter collectively referred to as the "Agreement"). Pursuant to the Agreement, Armand and his wife agreed to invest $250,000 in AACP. The Agreement provided for profit sharing "in the year following positive operating profit" by AACP, and for a buyout right (called an "exit strategy"), based on a multiple of AACP's EBITDA.

6.     In or about January 2015 Armand introduced Delphin to Armand's friend Reginal Poulard ("Poulard"), for the purpose of interesting Poulard also to invest in AACP. Following various conversations involving Delphin, Poulard and Armand, on February 4, 2015 Poulard executed a Summary of Terms and Subscription and Adoption Agreement that were materially identical to the Agreement.

7.     By email dated October 16, 2018, Armand, acting on behalf of Poulard and on his own behalf, asked Delphin about "the current situation of absence of ROI" and Poulard's desire to have his investment returned. Delphin responded that same day, explaining that since AACP had not achieved profitability there were no profits to share, and that Poulard's investment (and, implicitly, Delphin's investment) was currently valued at zero.

8.     By email dated October 24, 2018, Armand responded to Delphin's email, now claiming that he and Poulard "may have been subject to: fraud, deceit and misrepresentation of facts." This began an extended series of communications between Armand, Delphin, and their

attorneys and advisors, in which Armand continued to advance claims of fraud, all of which were vigorously rejected by Delphin.

9. On January 31, 2023, Poulard filed suit against Delphin, Investments, and AACP in the United States District Court for the Southern District of New York (No. 23-cv-00791-ER), asserting claims of fraud, breach of contract, and various other torts (the "Poulard Suit"). Upon information and belief, Poulard filed suit with the encouragement and assistance of Armand.

10. On January 19, 2024, the Court dismissed the Poulard Suit's first amended complaint, on the grounds that the claims asserted therein were barred by the statute of limitations and/or failed to state a cause of action. On February 9, 2024, Poulard filed a Second Amended Complaint, which Delphin has likewise moved to dismiss. As of the date hereof, that motion is *sub judice*.

11. At all times from October 16, 2018 to the date of this First Amended Complaint AACP has remained unprofitable and has had a negative EBITA.

## 2. The Defamatory Statements

12. At some point after October 24, 2018 currently unknown to Delphin but beginning not later than September 21, 2019, Armand began communicating with third parties concerning his baseless claims of fraud. Those third parties include the following:

**SEC**

13. On September 21, 2019, Armand sent an email (Exh. B hereto) to the United States Securities and Exchange Commission (the "SEC Defamation Email").

14. The SEC Defamation Email contains the following false and defamatory statements (the "SEC Defamations") :

   a. Delphin Investments has committed "Fraud and delinquent Business practices;

    b.  Delphin Investments is "a flagrant fraud attempt";

    c.  "Guy-[M]ax Delphin cannot be trusted"; and

    d.  "Delphin Investments is a scam."

15. Over the course of the next four years, Armand repeatedly attempted to interest the SEC in pursuing his claims. In those communications, Armand repeatedly republished to the SEC the SEC Defamations in various forms. The SEC at no time indicated any interest in pursuing Armand's claims.

**FINRA**

16. On May 18, 2023, Armand republished the SEC Defamations when he needlessly (a) attached the SEC Defamation Email as an exhibit to an unsuccessful "Request for Arbitration" directed to the Financial Industry Regulatory Authority (the "FINRA Defamation," Exh. C hereto); and (b) needlessly copied the SEC on that arbitration request.

**Nikki Picorro**

17. In or about May 2023 Armand communicated to one "Nikki Picorro" in words or substance that "Delphin Investments is a huge scam" and that Delphin was "a perpetual recidivist-scammer who has been and is defrauding hardworking individuals through a sophisticated scheme" (the "Picorro Defamation Communication"). As expected and desired by Armand, Picorro thereafter republished the Picorro Defamation on the "TRUTH SOCIAL" website, and taunted Delphin with an email containing the statement, "We especially look forward to your defamation lawsuit" (Exh. D hereto). This taunt manifested Picorro's and Armand's actual knowledge of this falsity of the statements made to her by Armand, and of the actual malice with which those statements were published.

18. The Picorro Defamation Communication contains the following false and libelous statements (the "Picorro Defamations"):

   a. Delphin Investments is "a huge scam";

   b. Delphin is "a perpetual recidivist-scammer"; and

   c. Delphin "has been and is defrauding hardworking individuals through a sophisticated scheme."

**US Attorney**

19. On May 25, 2023, Armand spoke by telephone to a representative of the United States Attorney's Office for the Southern District of New York, which communication he confirmed in an email dated May 30, 2023 (the "USA Defamation Communication," Exh. E hereto).

20. The USA Defamation Communication contains the following false and libelous statement (the "USA Defamation"): "This pattern of behavior displayed by Mr Guy-Max Delphin clearly indicates 'deliberate intent to deceive' from the start."

**BBB**

21. On June 6, 2023, Armand filed a complaint with the NY Better Business Bureau, No. 20142863 (the "BBB Defamation Communication," Exh. F hereto).

22. The BBB Defamation Email contains the following false and defamatory statements (the "BBB Defamations"):

   a. Delphin engages in "aggressive behavior every time the issue of dividends is brought up";
   b. "Guy-Max Delphin by mid 2018 avoids all [d]irect communications about the investment"; and
   c. "Guy-Max Delphin is consistently changing the terms of the initial agreement signed thus circumventing the fulfillment of his original commitments."

**United States Sentencing Commission**

23. On August 4, 2023, Armand sent an email to the United States Sentencing Commission (the "USSC Email," Exh. G hereto).

24. The USSC Email contains the following false and defamatory statements (the "USSC Defamations"):

   a. "I wish to formally and officially report Mr Guy-Max Delphin of Delphin Investments, LLC & Amitie Alternative Capital Partners , LLC for scam and financial theft";

   b. "It is in the general public interest that all be aware of Mr Guy-Max Delphin's advanced fraudulent scheme and financial crimes";

   c. "On and around 30th of January 2015, Mr Guy-Max Delphin has cheated me among others out of our hard earned money through a 5 years scheme."

**Maliciously Copying Third Parties on Emails to Delphin**

25. On March 18, 2024, Armand sent Delphin an email (the "March 18 Defamation Communication," Exh. H hereto) that stated in relevant part (anomalous capitalizations, misspellings, and grammatical errors in original):

> Respected Sir , I am writing to remind you for the 40th times that you return in full the fund I invested on and around the 30th of January 2015 in your company . Nine ( 9 ) years have gone by already . Since the 18th of December 2022 , You are deliberately hurting my family . It has come to our attention this is NOT your first SCAM ( your livelihood ) rather the most sophisticated one and that your mom is fully invested in the SCAM . She must be very proud of you . In the latter , you have specifically targeted National from Haiti. This is well documented . You have committed and are currently -as I am writing this mail - committing persistent and repeated fraud . I am confident that you , your crackpot lawyer will be soon found liable for fraud as a matter of general public interest . And I cannot wait the day when your business license will be rescinded to New York State and your company be put on receivership . You are hurting my children . You are hurting their future . We went thoroughly over the actual purpose of the investment . " Set for life " were your exact words to assure me the Return On Investment will secure my children's future . You will NOT get away with this fraud . **As we have an investigator working actively on the case , she has uncovered that Guy-Max " Super SCAMMER " Delphin has sold shares amounting to $ 2,5 million by the ends of 2023 . Further , our investigator has shared various pictures of the Super SCAMMER enjoying an opulent life obviously from stolen money. …**

26. The March 18 Defamation Communication contains the following false and defamatory statements (the "March 18 Defamations"):

    a. "You are deliberately hurting my family";

    b. "this is NOT your first SCAM";

    c. "your mom is fully invested in the SCAM";

    d. "you have specifically targeted National from Haiti";

    e. "You have committed and are currently -as I am writing this mail - committing persistent and repeated fraud";

    f. "I am confident that you [and] your crackpot lawyer will be soon found liable for fraud as a matter of general public interest";

    g. "You are hurting my children . You are hurting their future";

    h. "You will NOT get away with this fraud";

    i. "Guy-Max 'Super SCAMMER'"; and

    j. "our investigator has shared various pictures of the Super SCAMMER enjoying an opulent life obviously from stolen money."

27. Needlessly copied on the March 18 Defamation Communication were the SEC, the New York Attorney General (the "NYAG"), and the Connecticut Attorney General (the "CTAG"). Armand had previously and has subsequently sent to Delphin emails too many to set forth in detail herein, in which similarly libelous claims were made. Copied on certain of those emails were the SEC, the NYAG and the CTAG, none of whom took any action in response. Indeed, well prior to March 18, 2024 Armand fully understood, from the repeated refusal of those and other entities to pursue his claims, that those entities considered his allegations to be false and improper, and that continued communication with those agencies served no legitimate purpose.

28. On May 22, 2023, Armand sent Delphin an email which included several prior emails as part of the thread (the "May 22 Defamation Communication," Exh. I hereto). The May 22 Defamation Communication stated in relevant part (anomalous capitalizations, misspellings, grammatical errors and italics in originals; brackets indicate date of email):

7

    a. [May 22, 2023] "From January 2015 to March 2021 , you had Five ( 5 ) long years to uphold your commitment toward our initial agreement . In March 2021 , you again had the opportunity to show class and honor your initial commitment . You chose NOT to";

    b. [May 22, 2023] "[Y]our ongoing behavior toward my legitimate request is a clear indication that your sole focus REMAINS  your personal interest";

    c. [December 18, 2022] "We are approaching nine  years of unmet commitments and four (4) months of arrogance , disregard and disrespect from your end with no positive outcome in sight";

    d. [April 10, 2023] *"It is becoming clearer by the minute  after eight ( 8 ) years there was/ is no intention from the start ( Feb 2015 ) from Mr Guy-Max Delphin's  part to use the amount invested in My children's personal interest as initially discussed  with Mr Guy-Max Delphin and  agreed";*

    e. [April 10, 2023] *"At this stage , not only I am anxious about the situation  but sick with worry that Mr Guy-Max Delphin may simply  vanish  in thin Air . His behavior toward my simple request to cancel my investment is extremely concerning";* and

    f. [April 10, 2023] *"[B]y tending to turn  a deaf ear to my simple request , Mr Guy-Max Delphin is technically not only violating my fundamental  rights to make my own choices but as well as  my children's fundamental rights to education"*

29.    Copied on the May 22 Defamation Communication without legitimate purpose was the founder of Javlin Invest LLC, who had recently signed a partnership agreement with Investments. Armand's intention in doing so was to threaten Delphin, by manifesting his desire and willingness to interfere with and harm Delphin's business relationships.

30.    On April 18, 2024, Armand sent Delphin an email (the "April 18 Defamation Communication," Exh. J hereto). which stated in relevant part (anomalous capitalizations, misspellings, and grammatical errors in original):

    a. "You are deliberately hurting my family";

    b. "It has come to our attention this is NOT your first SCAM ( your livelihood ) rather the most sophisticated one and that your mom is fully invested in the SCAM";

    c. "you have specifically targeted National from Haiti.  This is well documented";

8

    d. "You have committed and are currently -as I am writing this mail - committing persistent and repeated fraud";

    e. "I am confident that you [and] your crackpot lawyer will be soon found liable for fraud as a matter of general public interest. And I cannot wait the day when your business license will be rescinded to New York State and your company be put on receivership";

    f. "You are hurting my children. You are hurting their future";

    g. "You will NOT get away with this fraud";

    h. "As we have an investigator working actively on the case , she has uncovered that Guy-Max " Super SCAMMER " Delphin has sold shares amounting to $ 2,5 million by the ends of 2023"; and

    i. "Further , our investigator has shared various pictures of the Super SCAMMER enjoying an opulent life obviously from stolen money."

31. Needlessly copied on the April 18 Defamation Communication was a partner and portfolio manager at Investments. Armand's intention in doing so was to threaten Delphin, by manifesting his desire and willingness to interfere with and harm Delphin's business relationships.

32. On July 30, 2024, Armand sent Delphin an email (the "July 30 Defamation Communication," Exh. I hereto) that stated in relevant part (anomalous misspellings, grammatical errors and incoherencies in original):

> Respected Sir ,
>
> We have Just watched a docuserie about children born out of rape .
>
> "The silence suffering of children born out of rape also accelerates their vulnerability and misery ."
>
> These words immediately caught our attention and made us think about you and your inherent suffering .
>
> Self-focused , blatant disregard for another human being are among the common characteristics .
>
> No wonder you have no kid , zero understanding of the word responsibility or of maintaining a respectable reputation

> And obviously have no understanding of what it means to have children .
>
> Scamming us , cheating us out of our hard earned money may appear perfectly fine through your traumatized mind .
>
> But it is NOT .
>
> Stealing money from hardworking individual as us will NOT erase the traumatic events of your life and help you regain self worth .
>
> Therapy may  .
>
> Need our money back

33. The July 30 Defamation Communication contains the following false and libelous statements (the "July 30 Defamations"):

   a. [You are] "Scamming us , cheating us out of our hard earned money."
   b. [You are] "Stealing money from hardworking individual as us."

34. As was well known to Armand at the time that the July 30 Defamation Communication was transmitted, Delphin was born out of wedlock, under circumstances that were widely considered in Haiti for years thereafter to be scandalous.

35. All of the defamatory claims alleged in this section, are hereinafter referred to as the "Cc Defamations."

36. As was so stated by Armand in the July 30 Defamation Communication, the references he made therein to a child of rape (the "Child of Rape Accusations") were intended to communicate to Delphin (and any readers of the email familiar with Delphin's background) the assertion that Delphin, figuratively or literally, was likewise a child of rape.

37. Needlessly copied on the July 30 Defamation Communication were the SEC, the NYAG, and the CTAG.

### 3. Armand's Penal Law Violations

38. The SEC Defamations, the FINRA Defamation, the Picorro Defamations, the USA Defamation, the BBB Defamations, the Cc Defamations, and the July 30 Defamations (hereinafter, the "Armand Defamations") in effect accused Delphin of violating N.Y. Penal Law §§ 155.40 (Grand Larceny in the Second Degree) and 190.60 (Scheme to Defraud in the Second Degree).

39. In publishing the Armand Defamations, Armand acted for the wrongful purpose of coercing Delphin into giving Armand monies that were not due to him, and which Armand knew were not due to him. As such, Armand repeatedly committed the crimes of extortion in violation of 18 U.S.C. § 875(d); and attempted Coercion in the Third Degree, in violation of N.Y. Penal Law §§ 110.00 and 135.60.

### COUNT I

### (Defamation)

40. In the context in which they were published, the Armand Defamations would be understood by their intended recipients to accuse Delphin of (a) misappropriating funds entrusted to him; (b) engaging in activities that were unethical, or otherwise incompatible with the proper exercise of Delphin's businesses; and/or (c) committing one or more infamous crimes.

41. The Armand Defamations were intended to subject Delphin to hatred, distrust, ridicule, contempt, and/or disgrace, and to injure him in his trade and profession.

42. The Armand Defamations were false.

43. Armand made the Armand Defamations knowingly or with reckless disregard for their falsity, and with actual malice.

44. Each of the Armand Defamations was published with actual malice, to annoy and embarrass Delphin, and to attempt to leverage an undeserved settlement or otherwise injure Delphin.

45. The Armand Defamations proximately caused Delphin to suffer injury to reputation and lose potential investors and/or income sources, thereby resulting in economic losses.

46. The Armand Defamations constitute defamation per se.

47. Delphin is entitled to a judgment (a) awarding him compensatory damages in such amount as may be proven at trial, but reasonably believed to exceed one million dollars; and (b) punitive damages in the amount of $10.0 million.

## COUNT II

### (Tortious Interference with Prospective Economic Advantage)

48. In publishing the Armand Defamations, Armand intended that they interfere with Delphin's business relations with third parties.

49. The Armand Defamations in fact interfered with Delphin's business relations with third parties, by causing such third parties to not invest with Delphin, to the financial detriment of Delphin in an amount to be determined at trial, but reasonably believed to exceed one million dollars.

50. Delphin is entitled to a judgment (a) awarding him compensatory damages in such amount as may be proven at trial, but reasonably believed to exceed one million dollars; and (b) punitive damages in the amount of $10.0 million.

## COUNT III

### (Intentional Infliction
### of Emotional Distress)

51. The Child of Rape Accusations constituted repugnant and shocking conduct.

52. The Child of Rape Accusations were either made with the intention of causing, or were made with disregard for the very high risk they raised of causing, debilitating and harmful emotional distress to Delphin.

53. The Child of Rape Accusations in fact caused Delphin to experience debilitating and harmful emotional distress.

54. Delphin is entitled to a judgment (a) awarding him compensatory damages in such amount as may be proven at trial, but reasonably believed to exceed one million dollars; and (b) punitive damages in the amount of $10.0 million.

## COUNT IV

### (Declaratory Judgment)

55. Based upon Armand's behavior to date, it can be expected that Armand (a) will continue to publish false and defamatory statements about Delphin unless restrained by this Court; and (b) will not seek to have his claims determined by a Court, as he is fully aware that they are false.

56. Delphin is entitled to a judgment (a) declaring that he has not committed any of the acts described in the Armand Defamations; (b) that the Armand Defamations and the Child of Rape Accusations are false and have been published with actual malice; and (c) that in publishing the Armand Defamations and the Child of Rape Accusations Armand repeatedly committed the crimes of extortion in violation of 18 U.S.C. § 875(d) and attempted Coercion in the Third Degree, in violation of N.Y. Penal Law §§ 110.00 and 135.60; (d) awarding Delphin a

mandatory injunction prohibiting Armand from further publication of the Armand Defamations and the Child of Rape Accusations.

    WHEREFORE, Delphin respectfully request the following relief:

a. On Count I, a judgment awarding him (i) compensatory damages in such amount as may be proven at trial; and (ii) punitive damages in the amount of $10.0 million.

b. On Count II, a judgment awarding him (i) compensatory damages in such amount as may be proven at trial; and (ii) punitive damages in the amount of $10.0 million.

c. On Count III, a judgment awarding him (i) compensatory damages in such amount as may be proven at trial; and (ii) punitive damages in the amount of $10.0 million.

d. On Count IV, a judgment (i) declaring that he has not committed any of the acts described in the Armand Defamations and that the Child of Rape Accusations, as applied to Delphin, are false; (ii) that the Armand Defamations and Child of Rape Accusations are false and have been published with actual malice; (iii) that in publishing the Armand Defamations and Child of Rape Accusations Armand repeatedly committed the crimes of extortion in violation of 18 U.S.C. § 875(d) and attempted Coercion in the Third Degree, in violation of N.Y. Penal Law §§ 110.00 and 135.60; and (iv) awarding Delphin a mandatory injunction prohibiting Armand from further publication of the Armand Defamations and Child of Rape Accusations.

e. On all causes of action, an award of interest, costs and disbursements.

f. Such other and further relief as the Court deems just and proper.

Dated: August 5, 2024

                                            /s/ *Harold F. Bonacquist*

Harold F. Bonacquist (HB6642)
Of Counsel
Litigation Sword, LLC
119 82nd Avenue
Kew Gardens, Queens NY 11415
(757) 903-1921
Attorneys for Delphin

## **DEMAND FOR TRIAL BY JURY**

Delphin hereby demands a trial by jury with respect to all issues triable by jury.

Dated: August 5, 2024

/s/ *Harold F. Bonacquist*

Harold F. Bonacquist (HB6642)
Of Counsel
Litigation Sword, LLC
119 82nd Avenue
Kew Gardens, Queens NY 11415
(757) 903-1921
Attorneys for Delphin